# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**WILLIAM TOZER**

PLAINTIFF,

V.

**FEDERAL AVIATION**

**ADMINISTRATION**

DEFENDANT.

**Case No.** _____

Case: 1:26-cv-00343
Assigned To : McFadden, Trevor N.
Assign. Date : 2/5/2026
Description: Pro Se Gen. Civ. (F-DECK)

800 Independence Avenue SW
Washington, D.C. 20024

**COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION**

**UNDER THE ADMINISTRATIVE PROCEDURE ACT**

Plaintiff William Charles Tozer hereby requests review of the final agency decision of the Federal Aviation Administration, issued by the Federal Air Surgeon of the Office of Aerospace Medicine, in a letter dated December 13, 2025, concerning the Plaintiff's medical disqualification from Air Traffic Control Specialist duties. The aforementioned letter is attached as Exhibit 1 to this complaint.

**RECEIVED**

FEB 0 5 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# GLOSSARY

The following terms and abbreviations are utilized throughout this document.

## <u>Medical</u>

**AME** – Aviation Medical Examiner

**ASD** – Autism Spectrum Disorder

**CogScreen** – CogScreen Aeromedical Edition 2

**DSM-5** – Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition

**MMPI** - Minnesota Multiphasic Personality Inventory-2

**OCD** – Obsessive Compulsive Disorder

**SSRI** – Selective serotonin reuptake inhibitor

**Zoloft** – Brand-name sertraline prescribed to the Plaintiff

## <u>Organizations</u>

**AAM** – Office of Aerospace Medicine

**ATC** – Air Traffic Control

**EEOC** – Equal Employment Opportunity Commission

**FAA** – United States Department of Transportation, Federal Aviation Administration

**HIMS** – Human Intervention Motivational Study

**NTSB** – National Transportation Safety Board

**The Court/This Court** – United States District Court, District of Columbia

## Individuals

**ATCS** – Air Traffic Control Specialist

**Mr. Clayton** – Robert Clayton, ATCS Program Analyst, FAA Virtual Hiring Team

**Dr. Edwards** – Curtis Edwards, Deputy Regional Flight Surgeon

**Mrs. Figurski** – Audrey Figurski, Program Analyst, FAA Aerospace Medicine Division, Virtual Hiring Team

**Dr. Kay** – Gary Kay, author of the CogScreen assessment

**Dr. Lynch** – James Lynch, Flight Surgeon, FAA Virtual Hiring Team

**Dr. Mukhara** – Hemelatha Mukhara, Plaintiff's prescribing psychiatrist

**FAS/Dr. Northrup** – Susan Northrup, Federal Air Surgeon

**Any reference to the first person (such as "I", "me" or "my"), unless contained within quoted material, refers to the Plaintiff, William Charles Tozer.**

## JURISDICTION

This Court has jurisdiction in this matter because:

1. 28 U.S.C. § 1331 provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This applies to my case because it involves a civil action challenging final agency action by a federal agency, the FAA.

2. The Administrative Procedure Act, 5 U.S.C. § 706, states that a Court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".

3. According to 5 U.S.C. § 704, "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." The FAA's December 9, 2025 letter (Exhibit 2) confirmed that "The decision of the Federal Air Surgeon is the final medical decision of the agency." I exhausted available administrative remedies by requesting review from the NTSB. They informed me in an email dated January 7, 2026 that "Our office has jurisdiction over appeals from denials of FAA certificates such as airman medical certificates pilots use, but does not have jurisdiction for anything related to FAA ATC medical qualifications. Therefore, the NTSB would not be a possible venue

based on the information you have provided." I then attempted to contact the EEOC to raise a potential discrimination case, and was told on January 26, 2026 that "Upon review of your communication, it appears your matter does not fall within our function. For complaints against the Office of Aerospace Medicine (AAM) regarding a medical disqualification claim for an Air Traffic Control Specialist (ATCS) applicant, you may contact: James R. Elliot, M.D." Because Dr. Elliot reports to the FAS, who has already rendered a final decision, no further administrative remedy exists. Therefore, the FAA's decision to sustain my medical disqualification is final agency action subject to judicial review under these provisions.

6

## VENUE

4. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because the FAA is "an agency of the United States", and "the events or omissions giving rise to the claim occurred" from the Federal Air Surgeon's Office at 800 Independence Avenue in Washington, DC.

## PARTIES

5. I, Plaintiff William Charles Tozer, am an individual and applicant for an Air Traffic Control Specialist position, which requires a medical clearance. I am directly affected by the FAA's decision denying this clearance.

6. The Defendant is the Federal Aviation Administration, an agency of the United States Federal Government responsible for regulating aviation safety, including handling medical certification of both pilots and Air Traffic Control Specialists. The FAA issued the final agency decision challenged in this complaint through the Federal Air Surgeon, Dr. Susan Northrup, in her official capacity.

## STATEMENT OF FACTS

### How the Defendant Violated the Law and How I Have Been Injured

7. Under 5 U.S.C. § 706, the FAA's denial of medical clearance was arbitrary and capricious because it relied on unspecified findings without providing a reasoned explanation, ignored or discounted evidence in my medical records, and issued a decision contrary to the evidence in these records.

8. As a direct result of the FAA's action, I have been denied employment as an Air Traffic Control Specialist and incurred financial costs and expended time completing documentation and evaluations.

### Timeline

For purpose of this complaint, I have included only the facts relevant to the FAA's final agency decision. Additional dates, communications, and events related to the ATC hiring process are available and can be provided as necessary.

9. On February 28, 2025, I applied to become an ATCS as a pool 2 candidate and received my Air Traffic Skills Assessment invitation the same day. I completed the assessment on March 4, 2025, and

9

was notified on March 12, 2025 that I had been placed in the "Well Qualified" category.

10. I received and signed my Tentative Offer Letter on March 18, 2025, and obtained my Clearance Instruction Letter on April 7, 2025, which instructed me to submit medical records, complete a drug test, and take the MMPI.

11. I submitted the Pre-Employment Interview Worksheet on April 18, 2025, completed the MMPI on April 22, 2025, submitted the MedXPress medical application on April 27, 2025, and completed my drug test and physical exam by May 4, 2025. The AME, James Koch, deferred my application to the FAA.

12. On May 12, 2025, Mr. Clayton requested additional medical and supporting documents, which I submitted in portions on May 28, June 1, and June 8, 2025.

13. On July 28, 2025, I received a letter from Dr. Lynch stating I would be disqualified unless I completed a HIMS evaluation, which included neurocognitive testing. I completed the CogScreen, WAIS-IV selected subtests, WRAT-IV Reading, Paced Auditory Serial Addition Test, Trail Making Test, Test of Variables of Attention (TOVA), Verbal Fluency test, CAARS, and another MMPI with Dr. Kay on August 8, 2025.

14. On October 10, 2025, I called the regional AAM office and was informed by Mrs. Figurski that I was medically disqualified. I submitted an intent to appeal on October 13, 2025.

15. I requested and received an extension of the appeal deadline on November 30-December 1, 2025. Dr. Edwards called me and informed me that he was sustaining the disqualification and escalating the case to the Federal Air Surgeon.

16. I submitted an appeal letter on December 4, 2025. Mr. Clayton forwarded my file to Dr. Edwards, who sent it to the Federal Air Surgeon on December 9, 2025.

17. I received the FAA decision letter sustaining my medical disqualification on December 14, 2025.

11

## CLAIMS

This complaint does not ask the Court to substitute its medical judgment for that of the FAA. Rather, it seeks review of whether the FAA complied with the Administrative Procedure Act by relying on accurate facts, disclosed standards, and a rational connection between the evidence in the administrative record and the decision reached.

18. **Arbitrary and Capricious Agency Action (5 U.S.C. § 706(2)(A))**

   a. The FAA's decision to sustain my medical disqualification was arbitrary and capricious because it selectively relied on isolated test scores and generalized assertions while disregarding or discounting substantial, material evidence in the administrative record that directly contradicted its conclusions.

   b. The FAA-required HIMS neuropsychological evaluation concluded that:

      i. "the current neuropsychological test findings show no evidence of aeromedically significant neurocognitive deficits."

      ii. "Review of records supports the diagnosis of Autism Spectrum Disorder (ASD). The functional impact of this condition appears to have diminished (or resolved) during his adolescence. He has not required or utilized

12

accommodations in work or academic settings. He has continued to perform well in both of these settings. His personal statement reflects a good level of self awareness and understanding of his condition. He appears to have learned appropriate and effective coping strategies."

    iii. "There was no evidence of problematic anxiety or depression evident on personality testing."

c. As part of the FAA's ATCS applicant process, I was required to complete and pass the Air Traffic Skills Assessment, an agency-designed screening instrument used to evaluate cognitive and operational aptitude relevant to ATCS training. I successfully passed this assessment and obtained a "Well Qualified" score, placing me in the bracket above "Qualified". The FAA's final medical disqualification does not address, distinguish, or reconcile this outcome with its conclusion that I lack the minimum cognitive capacity required to proceed in the ATCS qualification process.

d. The FAA failed to explain why these findings - generated through the very tests it required - were insufficient to meet medical standards. Dr. Edwards informed me that the agency concluded I lacked "mental minimum capacity." This

13

explanation was not supported by the FAA-required neuropsychological report or other medical evidence.

19. **Agency Action Based on a Material Factual Error (5 U.S.C. § 706(2)(A))**

   a. The FAA's decision was an abuse of discretion because it relied on an incorrect statement of my neurocognitive test results.

   b. In sustaining the medical disqualification, the FAA progressively distorted the Logistic Regression Estimated Probability of Brain Dysfunction (LRPV).

   i. Within the official CogScreen Score Report, my LRPV (page 7) is listed as 0.8262.

   ii. Dr. Kay, in his final report to the FAA, rounded this value down to 0.826. Due to a single low math reasoning subtest, the score was significantly inflated. Dr. Kay noted this and said "There was a marked improvment in his LRPV score with the elimination of the contribution of his poor performance on the math reasoning test (LRPV-m = 0.179). The corrected LRPV score suggests that acquired cerebral dysfunction is unlikely." (Assuming "improvment" is meant to be "improvement")

   iii. In an applicant note dated October 9, 2025, Dr. Lynch stated "LRPV 0.827 (high/concerning", but did not provide an explanation for why he was rounding the last

14

digit up instead of down, as it is closer to 0.826 than 0.827.

iv. In his letter to the Manager of the Medical Appeals Branch (AAM-240), Dr. Edwards said "LRPV - 0.87 is concerning and I am unconvinced that LRPVm 0.17 represents an encouraging score given the deficits in 'mental special rotation, mental arithmetic and clerical accuracy. In addition, his one weakness under multitasking conditions was on a test of letter/number sequencing.'. (see Dr. Lynch's excellent note)."

c. Although Dr. Edwards stated that he was unconvinced by the corrected LRPV-m score, the administrative record does not explain or support his characterization of my LRPV as 0.87. The original HIMS report documented an LRPV of 0.8262 and explicitly explained the methodological correction applied to derive the LRPV-m score. No similar recalculation or methodological basis appears in the record for the higher value cited by Dr. Edwards. An agency may weigh evidence, but it may not misstate it.

d. By inflating and misreporting my LRPV, the FAA relied on a materially different LRPV than reported in the HIMS evaluation without methodological justification, raising questions as to

15

whether the agency's characterization of cognitive risk was arbitrary or unsupported by the record.

20.   **Failure to Provide a Reasoned Explanation and Consider Relevant Factors (5 U.S.C. § 706(2)(A))**

a. An agency acts unlawfully when it fails to articulate a rational connection between the facts found and the decision made, or when it ignores important aspects of the problem.

b. The FAA cited percentile scores on certain cognitive subtests, including digit symbol substitution (12th percentile) and letter-number sequencing (10th percentile), as evidence of disqualification, but failed to explain:

  i. How these isolated scores, in context, demonstrated an inability to safely perform ATCS duties. Under 5 U.S.C. § 706(2)(A), agency action must articulate a rational connection between the facts found and the decision made. The FAA record fails to show how individual subtest scores meaningfully affected my functional ability to perform ATCS duties; or

  ii. Why they outweighed the overall neuropsychological conclusion that no aeromedically significant neurocognitive deficits were present.

16

    iii. The standard used to determine disqualification, including any cutoff score or threshold for acceptable functioning.

c. During our phone call, Dr. Edwards provided general statements about mental minimum capacity and ATC duties, but did not connect my test results to actual performance limitations in a methodologically sound or individualized manner.

d. The front cover of the CogScreen score report itself states that "scores falling in the impaired range do not necessarily reflect acquired brain dysfunction", a limitation the FAA failed to acknowledge or address.

e. The FAA relied on generalized statements that mental spatial rotation, mental arithmetic, clerical accuracy, and multitasking are "vital" to air traffic control, without explaining how my performance demonstrated an actual safety risk or inability to meet the minimum medical standard.

f. The FAA failed to articulate a reasoned explanation connecting the evidence in the record - including neuropsychological test results, clinical letters, and documented functional performance - to the determination that I lack the mental minimum capacity required for ATCS duties.

17

21. **Improper Reliance on Undisclosed or Inconsistent Standards (5 U.S.C. § 706(2)(D))**

    a. The FAA cited the absence of a drug test during the CogScreen evaluation as a basis for concern, suggesting that stimulant use could have masked ADHD-related deficits.

    b. I was never informed that a drug test was required as part of the CogScreen evaluation, nor was any such requirement documented in the instructions provided to me. To the best of my knowledge, this was not communicated to Dr. Kay, either, as I have obtained a letter (Exhibit 3) from him via email in which he states, "Your exam followed standardized administration procedures and was interpreted following professional standards."

    c. The FAA's reliance on an alleged procedural deficiency that it did not disclose, require, or document in the instructions that it provided to me regarding obtaining a HIMS evaluation deprived me of a fair opportunity to comply. Thus, this renders the decision arbitrary and capricious.

22. **Consideration of Improper Factors and Predetermination (5 U.S.C. § 706(2)(A))**

    a. Notes authored by Dr. Edwards reflect reasoning unrelated to the applicable medical standards, including:

18

  i. ATCS positions are not intended for applicants to demonstrate capability in training through "academic experimentation";

  ii. Speculation about my likelihood of failing training, as noted by the text "we have clues that the course work/job is beyond his capability";

  iii. An emphasis on "past academic difficulty" in grade school being a predictor of future failure. The determination gives weight to minor academic difficulties in middle school and early high school, while disregarding my successful senior year of high school, subsequent college performance, and graduation Magna Cum Laude from Northern Virginia Community College. The FAA does not reconcile this selective emphasis with evidence of demonstrated functional ability, creating an unsupported and arbitrary assessment;

  iv. A reference to the cost of sending an applicant through the Academy and paying for on-the-job training post-graduation.

b. These considerations are not part of the medical qualification standards in FAA Order 3930.3C and reflect impermissible reliance on economic, speculative, and outcome-based factors

19

rather than medical fitness. "Training [is] expensive" is not a valid medical defense.

c. The inclusion of such reasoning demonstrates that the decision was influenced by considerations outside the scope of lawful medical adjudication.

23. **Inconsistent and Shifting Rationale (5 U.S.C. § 706(2)(A))**

a. The FAA's initial disqualification cited "autism spectrum disorder, anxiety disorder and unfavorable neurocognitive evaluation" under specific provisions of FAA Order 3930.3C.

b. The final decision expanded and altered the stated bases for disqualification to include "unspecified anxiety; unspecified depression; obsessive-compulsive disorder (OCD) ;use of conditional medication; and neurodevelopmental disorder with autism spectrum traits", while citing different regulatory paragraphs (with the exception of 5g, which remained consistent).

c. The FAA's documentation does not clearly reconcile changes in rationale or provide a standard for evaluating cognitive or functional abilities, making it difficult to assess the reasoned basis for the disqualification.

d. Such shifting justifications undermine meaningful judicial review and constitute arbitrary and capricious agency action.

24. **Misdiagnoses and Misapplication of Medical Standards**

20

a. The FAA's decision incorrectly labels me as having a "neurodevelopmental disorder with autism spectrum traits." This is not a formal diagnosis under the DSM-5 or other accepted psychiatric standards. My actual medical record, as documented by qualified clinicians, reflects either ASD or Asperger's Syndrome, but not a vague, generalized "autism spectrum traits" designation. The FAA relied on this imprecise characterization as part of its rationale for disqualification, rather than relying on documented, individualized evidence of functional limitations.

b. I have never been diagnosed with anxiety separate from my OCD. Dr. Mukhara has repeatedly informed me that my anxiety diagnosis is specifically my OCD, and is not a separate diagnosis. Exhibit 5 confirms this in her words with her signature. Therefore, the claim of unspecified anxiety is incorrect.

c. I have never received a formal diagnosis of depression from a qualified mental health provider. The only references in my records are a misattributed note by my gastroenterologist, Dr. Bezawit Tekola, (which I have recently had corrected; please see Exhibit 4) and two minor, historical mentions in therapy notes from over seven years ago related to specific situations,

21

neither of which constitute an official current or former clinical diagnosis.

d. I have been prescribed sertraline (Zoloft), a medication approved by the FAA for use under certain medical conditions. Dr. Mukhara has confirmed that my use of sertraline is consistent with accepted medical practice, and Dr. Kay has confirmed that it has not caused any aeromedically significant neurocognitive deficits. The FAA's reliance on my use of sertraline as a basis for disqualification is unsupported by evidence showing impairment in ATCS-relevant cognitive or functional abilities.

e. The clinical record, including neuropsychological testing, identifies certain relative weaknesses, but does not indicate deficits that would preclude performing ATCS duties. Academic and professional achievements provide additional context for functional capacity.

## REQUEST FOR RELIEF

I request that the Court do the following:

25.    Vacate the Federal Aviation Administration's December 13, 2025 medical disqualification decision for Plaintiff William Charles Tozer from Susan E. Northrup, Federal Air Surgeon, AAM-1 as arbitrary, capricious, and not in accordance with law;

26.    Remand the matter to the Federal Aviation Administration with instructions to issue a reasoned decision consistent with the Administrative Procedure Act and its own medical standards, addressing the deficiencies identified in this complaint, and order it to consider one of the following actions:

   a. Issue an unrestricted medical clearance;

   b. Issue a Special Consideration/Special Issuance medical clearance;

   c. Issue a medical clearance contingent upon Plaintiff's successful completion of ATCS Academy training. This relief would allow the Federal Aviation Administration to fulfill its safety mandate while providing Plaintiff a fair opportunity to demonstrate functional capacity through actual training in a non-safety-critical environment, rather than relying solely on isolated test scores or generalized assertions;

23

      d. Revise the denial in strict accordance with the medical criteria outlined in DSM-5 and FAA Order 3930.3C, and provide a written, individualized explanation addressing all arguments from Plaintiff deemed relevant by the Court.

27.      Declare that the Federal Aviation Administration's reliance on undisclosed standards, selective use of test scores, and consideration of improper factors constitutes unlawful agency action;

28.      Award Plaintiff William Charles Tozer any costs and expenses that the Court deems reasonable, including attorneys' fees if applicable;

29.      Grant any other relief the United States District Court, District of Columbia deems just and proper.

24

## Demand for Jury Trial

I do <u>NOT</u> request a trial by jury because this action is brought under the Administrative Procedure Act, which provides for judicial review of agency action on the administrative record.

Page 26

## PLAINTIFF'S SIGNATURE

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, here is my contact information: [Redacted from Public, Please see seprate notice form]

**DATE OF SIGNING: 02/04/2026**

**PRINTED NAME OF PLAINTIFF: William Charles Tozer**

**PLAINTIFF'S SIGNATURE BELOW**

*Thank you for your consideration,*

27